**United States District Court**
**District of Massachusetts**

```
_____
                                )
STEVEN PAJAK,                   )
                                )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No.
                                )   19-10277-NMG
ROHM & HAAS COMPANY, ROHM & HAAS )
ELECTRONIC MATERIALS LLC, THE   )
DOW CHEMICAL CO. and ALFA LAVAL, )
INC.,                           )
                                )
        Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

GORTON, J.

This case arises out of an industrial accident in which Steven Pajak ("Pajak" or "plaintiff") suffered serious personal injuries.  He brings claims for negligence against Rohm & Haas Company ("Rohm & Haas"), Rohm & Haas Electronic Materials LLC ("RHEM") and The Dow Chemical Company ("Dow Chemical") (collectively "the Dow defendants") as the entities that owned or maintained the container and the chemical manufacturing facility where the accident occurred.[1]  He also asserts claims for 1) negligence, 2) breach of express and implied warranties of merchantability and fitness and 3) product liability against

---

[1] The complaint uses the term "vessel" which apparently refers to a container of some kind and not to a boat.  To avoid confusion, this Court uses the term "container" to refer to the product at issue.

-1-

Alfa Laval, Inc. ("Alfa Laval") which allegedly designed, manufactured, marketed and/or distributed the purportedly defective container involved in the explosion that injured plaintiff.

Pajak alleges that the Dow defendants failed 1) to maintain in a reasonably safe condition the facility and the container and 2) to adopt a reasonably safe method or provide adequate training to plaintiff for the "trimethylaluminum reclamation process" in which he was engaged when injured.  He also submits that Alfa Laval negligently designed, manufactured, tested and/or placed into the channels of commerce a defective and/or inherently dangerous container which caused the explosion and his resulting injuries.

Before this Court are 1) Alfa Laval's motion to dismiss the claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), 2) RHEM's motion to dismiss Count II of the complaint for lack of jurisdiction or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and to award attorneys' fees and costs incurred in connection with its motion and 3) the motion of Rohm & Haas and Dow Chemical for judgment on the pleadings as to Counts I and III of the complaint pursuant to Fed. R. Civ. P. 12(c).

I.   **Background**

**A.   The Parties**

Pajak is a resident of Billerica, Massachusetts.  He was employed at a chemical manufacturing facility owned, operated and/or maintained by the Dow defendants which is located in North Andover, Massachusetts ("the Facility"), although it is unclear exactly which of the three Dow defendants was his direct employer.

Rohm & Haas is a Delaware corporation with a principal place of business in Collegeville, Pennsylvania.  It manufactures specialty chemicals for use in building and construction, electronic devices, packaging and household and personal care products.  Dow Chemical is a Delaware corporation with a principal place of business in Midland, Michigan.  It is one of the largest American, multi-national, chemical corporations and it manufactures plastics, chemicals and agricultural products.  RHEM is a limited liability company that manufactures and distributes specialty chemicals and materials to the electronic and opto-electronic industries.  RHEM is a wholly owned subsidiary of Rohm & Haas which, in turn, is a wholly owned subsidiary of Dow Chemical.  Dow Chemical is a wholly owned subsidiary of Dow, Inc. which is a publicly held company (and not a named defendant).  The three defendants together allegedly owned, operated and maintained the Facility.

Alfa Laval is a New Jersey corporation with a principal place of business in Richmond, Virginia.  It manufactures and supplies products used to heat, cool, separate and transport various products, such as water, oil, chemicals, beverages and foodstuffs.  Alfa Laval allegedly designed, manufactured and/or distributed the allegedly defective container that Pajak encountered at the Facility.

**B.   The Accident**

In or about January, 2016, Pajak was working at the Facility when oxygen came into contact with trimethylaluminum contained in the allegedly defective container, resulting in an explosion and fire.  Plaintiff sustained serious personal injuries as a result of the explosion, including serious burns to his face and hands and loss of vision in his left eye.

Plaintiff sought and obtained compensation from RHEM under the Massachusetts Workers' Compensation Act ("the MWCA" or "the Act"), M.G.L. c. 152.  In August, 2017, the Massachusetts Department of Industrial Accidents ("the DIA") approved his lump sum settlement agreement with RHEM and its workers' compensation insurer pursuant to § 48 of the MWCA.  He was paid $253,000 as a result of that settlement.  Moreover, in the form submitted to the DIA for approval of the settlement, Pajak explicitly acknowledged that RHEM was his employer and that the payment he

received was in redemption of the liability owed to him by RHEM under the MWCA.

### C.   Procedural History

In January, 2019, plaintiff filed a complaint in the Massachusetts Superior Court for Essex County.  In February, a notice of removal was filed by Alfa Laval (to which the Dow defendants consented), invoking this Court's federal diversity jurisdiction.

Shortly thereafter, Alfa Laval filed a motion to dismiss the claims against it for lack of personal jurisdiction.  It submits that 1) plaintiff has not alleged any facts to establish general personal jurisdiction over it in Massachusetts nor 2) has he sufficiently identified the allegedly defective product to determine whether Alfa Laval purposefully directed that product into Massachusetts or whether it ended up in the forum fortuitously.  Alfa Laval also contends that plaintiff has failed to state a claim for negligence, breach of warranty or product liability because he has not sufficiently identified the product at issue.  Plaintiff responds that he has reason to believe (based on communications with the Dow defendants) that Alfa Laval manufactured and/or supplied the allegedly defective product and asserts that he is entitled to some jurisdictional discovery in order to identify the specific product and the

company that manufactured and/or supplied it to the Dow
defendants.

RHEM also filed a motion to dismiss Count II of the
complaint for lack of jurisdiction and for failure to state a
claim.  It also requested an award of attorneys' fees and costs
incurred in connection with that motion.  It maintains that
§§ 23, 24 and 48 of the MWCA precludes Pajak from seeking
recovery from RHEM for his injuries because he has already been
compensated pursuant to the lump sum settlement agreement with
RHEM.  RHEM claims that plaintiff's refusal to dismiss his claim
against it is unreasonable and vexatious and thus it should also
be awarded attorneys' fees and costs incurred in connection with
that motion under 28 U.S.C. § 1927.

Plaintiff responds that he currently lacks sufficient
information to determine which of the three Dow defendants was
his employer at the time of the accident.  He volunteers to
dismiss the appropriate party upon receiving the relevant
information and counters that he is the party entitled to
attorneys' fees and costs in connection with RHEM's motion
because it is the failure of the Dow defendants to provide his
employment file that has created this jurisdictional issue.

In April, 2019, Rohm & Haas and Dow Chemical filed a motion
for judgment on the pleadings as to Counts I and III of the
complaint.  They assert that plaintiff has failed to allege

facts sufficient to establish either 1) how Rohm & Haas or Dow Chemical breached their alleged duty of care to Pajak or 2) how that alleged breach of duty caused his injuries.  Plaintiff rejoins that he is not required to plead detailed and specific facts at this stage and that he has alleged facts sufficient to establish the elements of both breach of duty and causation.  He also requests, in the alternative, to be allowed to file an amended complaint.

## II. Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim

### A. Legal Standard

On a motion to dismiss for want of personal jurisdiction, plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. See Mass. Sch. of Law at Andover, Inc. v. ABA, 142 F.3d 26, 33-34 (1st Cir. 1998).  The Court must take facts alleged by plaintiff as true and construe disputed facts favorably towards plaintiff. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, this Court must determine whether 1) jurisdiction is permitted by the Massachusetts long-arm statute

and 2) the exercise of jurisdiction coheres with the Due Process Clause of the United States Constitution. Id.  Alfa Laval does not contend that plaintiff has failed to satisfy the Massachusetts long-arm statute nor does plaintiff assert that Alfa Laval is subject to general personal jurisdiction in Massachusetts and thus this Court will focus on the requirements of specific personal jurisdiction.

This Court may exercise specific personal jurisdiction when defendants have certain "minimum contacts" with Massachusetts such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  When assessing whether the exercise of jurisdiction comports with due process, the court evaluates

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

Cossart v. United Excel Corp., 804 F.3d 1, 20 (1st Cir. 2015) (internal citation omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### B.  Application

Plaintiff concedes that at this stage it has insufficient information to identify the specific product at issue.  He submits, however, that he has alleged enough facts to warrant some jurisdictional discovery before dismissing Alfa Laval from this case for lack of personal jurisdiction. See Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) ("[A]

diligent plaintiff who sues an out-of-state corporation and [states] a colorable [claim] for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001))).

Plaintiff has the burden of proving that Alfa Laval purposefully availed itself of Massachusetts by intentionally directing its products to the forum state in order for this Court to exercise specific personal jurisdiction. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 682-83 (1st Cir. 1992) (rejecting the "stream of commerce" theory of personal jurisdiction and holding that "mere awareness that a product may end up in the forum state does not constitute purposeful availment" for purposes of establishing specific personal jurisdiction (internal quotation marks omitted)).

The only allegations that Pajak makes to connect Alfa Laval to Massachusetts is that 1) his injuries occurred in Massachusetts and 2) those injuries were allegedly caused by a container purportedly manufactured, designed and/or placed into the channels of commerce by Alfa Laval.  The place of injury is insufficient alone to establish specific personal jurisdiction. See Walden v. Fiore, 571 U.S. 277, 290 ("The proper question is not where the plaintiff experienced a particular injury or

effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Plaintiff alleges no facts to support that Alfa Laval meaningfully and purposefully directed the allegedly defective container into Massachusetts (for example by designing the containers for or selling, advertising or marketing them to customers in Massachusetts). See Boit, 967 F.2d at 683.

Indeed, Pajak has not specifically identified the particular product which allegedly caused his injuries. He submits that the Dow defendants informed him that Alfa Laval assembled and supplied the allegedly defective trimethylaluminum conatiner or component parts but Alfa Laval contends that it does not manufacture or design "trimethylaluminum vessels" nor is it aware of any Alfa Laval product that might be described as such. Without a sufficient identification of the product in the complaint, it is impossible for Alfa Laval (and this Court) to determine whether that defendant actually directed the container to a customer in Massachusetts or whether it ended up in the forum fortuitously.

Furthermore, district courts have held that a plaintiff's failure to identify the specific product at issue in a negligence or products liability case warrants dismissal for failure to provide the defendant sufficient notice of the claim against it. Del Castillo v. PMI Holdings N. Am. Inc., Civil

-11-

Action No. 4:14-CV-03435, 2016 WL 3745953, at *17 (S.D. Tex. July 13, 2016) ("Plaintiffs do not provide a product identification number, a description of the [product], the [product's] location in the refinery, or any other information that could aid [defendant] in determining whether one of its products was involved in the refinery explosion.  Because the Complaint fails to give [defendant] fair notice of what product is at issue, the claims against it must be dismissed."); Campbell v. ABB Inc., No. 4:14CV01489 AGF, 2015 WL 1006388, at *2 (E.D. Mo. Mar. 5, 2015); Thorpe Design, Inc. v. Viking Corp., Case No. 15-cv-03324-EDL, 2015 WL 5440792, at *2 (N.D. Cal. Sept. 15, 2015) (dismissing claims for product liability and negligence because "[t]he complaint is overly vague as to what product is at issue"); Thompson v. DePuy Orthopaedics, Inc., No. 1:13-CV-00602, 2014 WL 2874268, at *3 (S.D. Ohio June 24, 2014).

This Court agrees with the reasoning of the cited decisions.  Accordingly, the claims against Alfa Laval (Counts IV, V and VI of the complaint) will be dismissed for 1) lack of personal jurisdiction and 2) failure to state a claim.  The claims against Alfa Laval will, however, be dismissed without prejudice and plaintiff will be permitted to renew those claims in the event that he can sufficiently identify the subject container and establish that Alfa Laval 1) manufactured, designed or supplied that product and 2) intentionally directed

-12-

it into the forum.  The Court finds that Pajak has made out a
colorable claim of personal jurisdiction as to Alfa Laval and is
thus entitled to some jurisdictional discovery to determine
whether Alfa Laval manufactured and purposefully directed the
subject container into Massachusetts.

### III. <u>Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim</u>

#### A.   Legal Standard

A plaintiff faced with a motion to dismiss under Fed. R.
Civ. P. 12(b)(1) bears the burden of establishing that the court
has subject matter jurisdiction over the action. <u>Lujan</u> v. <u>Defs.
of Wildlife</u>, 504 U.S. 555, 561 (1992).  If the defendant mounts
a "sufficiency challenge", the court will assess the sufficiency
of the plaintiff's jurisdictional allegations by construing the
complaint liberally, treating all well-pled facts as true and
drawing all reasonable inferences in the plaintiff's favor.
<u>Valentin</u> v. <u>Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir.
2001).

If the defendant advances a "factual challenge" by
controverting the accuracy, rather than the sufficiency, of the
alleged jurisdictional facts, "the plaintiff's jurisdictional
averments are entitled to no presumptive weight" and the court
will consider the allegations by both parties and resolve the
factual disputes. <u>Id.</u>  The court has "broad authority" in

conducting the inquiry and can, in its discretion, order discovery, consider extrinsic evidence or hold evidentiary hearings in determining its own jurisdiction. Id. at 363-64.

### B.   The MWCA

#### 1.   The Exclusivity Provision

Courts have treated motions to dismiss claims for personal injury based on the exclusivity provision of the MWCA as motions to dismiss for lack of subject matter jurisdiction. See, e.g., Branyan v. Sw. Airlines Co., 105 F. Supp. 3d 120, 125 (D. Mass. 2015) (citing Fusaro v. Blakely, 661 N.E.2d 1339, 1341 (Mass. App. Ct. 1996)).  Compensation under the MWCA is the exclusive remedy for injuries suffered by an employee during the course of employment unless the employee has notified his employer in writing that he wishes to waive his right to compensation under the Act. Estate of Moulton v. Puopolo, 5 N.E.3d 908, 914 (Mass. 2014) ("So long as the injuries were sustained while the employee was acting in the course of her employment, . . . actions for negligence, recklessness, gross negligence, and wilful and wanton misconduct by an employer are precluded by the exclusive remedy provision."); see also M.G.L. c. 152, § 24.

The Act's exclusivity provision bars a claim for personal injury only where 1) "the plaintiff is shown to be an employee", 2) "his condition is shown to be a personal injury within the meaning of [the Act]" and 3) "the injury is shown to have arisen

-14-

out of and in the course of . . . employment". Foley v. Polaroid
Corp., 413 N.E.2d 711, 713-14 (Mass. 1980) (internal quotation
marks omitted) (second alteration in original) (citing M.G.L. c.
152, § 26).  Moreover, under § 23 of the Act, an employee who
accepts payment for personal injuries thereunder (including
through a settlement agreement under § 48) releases the employer
from any further liability for claims at common law arising from
that injury. Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77
(1st Cir. 2010); see also M.G.L. c. 152, §§ 23, 48.

        Once an employee acknowledges that a particular entity is
his employer by accepting a lump-sum settlement under § 48 of
the Act, the employee cannot thereafter claim that the entity
was not his employer and thereby bring a common law claim for
personal injury. See Faria v. Portuguese Am. Civil League of
Lowell, 103 N.E.3d 771 (Table) (Mass. App. Ct. 2018)
("[Plaintiff] pursued his claim through the administrative
procedures established by the DIA, he and the [defendant]
participat[ed] in the DIA benefit determination process, and
they agreed upon a lump-sum settlement under § 48.  By the
express terms of § 23, that settlement was [plaintiff's]
exclusive remedy against the [defendant] for his injury."
(internal quotation marks and citations omitted)); Kniskern v.
Melkonian, 862 N.E.2d 450, 454-55 (Mass. App. Ct. 2007) ("The
filing of a claim and acceptance of a lump sum settlement at the

DIA precludes tort recovery against the employer for the same injury.").

Section 15 of the MWCA also enables employees to sue liable third parties for their injuries and § 18 obligates a general contractor to pay workers' compensation benefits to the employees of uninsured subcontractors. M.G.L. c. 152, §§ 15, 18. Unlike a settlement agreement entered into under § 48 of the Act, however, a settlement agreement entered into under § 18 does not thereafter preclude an employee from asserting common law claims against the settling party for those very same injuries. Wentworth v. Henry C. Becker Custom Bldg. Ltd., 947 N.E.2d 571, 574-76 (Mass. 2011).

## 2. Application

In resolving the motion of RHEM, the Court considers the copy of the lump-sum settlement agreement submitted by the defendant (the authenticity of which plaintiff does not contest). That document makes it clear that Pajak acknowledged RHEM as his employer for purposes of the lump-sum settlement of $235,000. Furthermore, the agreement provides that

> [t]his payment is received in redemption of the
> liability of all weekly payments now or in the future
> due me under the [MWCA].

Finally, that agreement was submitted to and approved by the DIA in settling Pajak's claims under the MWCA.

-16-

Relying on the decision of the Massachusetts Supreme Judicial Court ("the SJC") in Wentworth, plaintiff contends that there is legitimate confusion as to the identity of his direct employer at the time of his injury and thus he is not precluded from suing RHEM even though it was listed as his employer in the settlement agreement.  Wentworth is, however, distinguishable from this case.

There, the SJC held that the exclusivity provision of the MWCA does not release from liability a general contractor that pays workers' compensation benefits to the employee of an uninsured subcontractor. Wentworth, 947 N.E.2d at 574. Essential to that decision was the third-party relationship between the general contractor and the individual employee and the fact that the general contractor was required to pay benefits as a liable third party under § 18 of the MWCA. See id. at 575-76.  Here, Pajak explicitly acknowledged that RHEM was his direct employer (and not some third-party liable under § 18 of the Act) and entered into a lump-sum settlement agreement pursuant to § 48 based on that assumption. See Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 68 n.3 (1st Cir. 2012) (distinguishing the situation in Wentworth from "the typical situation in which the employee of an insured employer relinquishes any private right of action that he might have had against the insured by accepting workers'

-17-

compensation benefits"); <u>Faria</u>, 103 N.E.3d at 771 n.3 ("Nothing in [<u>Wentworth</u>] requires us to revisit <u>Kniskern</u>['s] . . . holding that the plaintiff's employment status was established when the plaintiff accepted a lump-sum settlement pursuant to G.L. c. 152, § 48, which only applies to employees." (internal quotation marks omitted)); <u>see also</u> <u>Wentworth</u>, 947 N.E.2d at 575 n.7 (citing with approval the holding of <u>Kniskern</u>).  Plaintiff cannot now avoid the consequences of that settlement agreement by disputing that RHEM was his employer at the time of his injury.

Accordingly, RHEM's motion to dismiss Count II of the complaint for lack of jurisdiction pursuant to the exclusivity provision of the MWCA will be allowed <u>with</u> <u>prejudice</u>.[2]

## IV.  **Motion for Judgment on the Pleadings**

### A.   **Legal Standard**

Although a Rule 12(c) motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer, it is governed by the same standard as a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Perez-Acevedo</u> v. <u>Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008).  To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim

---

[2] The Court in exercising its discretionary authority declines, however, to award RHEM its attorneys' fees and costs incurred in connection with its motion because plaintiff's argument based on <u>Wentworth</u> was neither unreasonable nor vexatious. <u>See</u> 28 U.S.C. § 1927; <u>Galanis</u> v. <u>Szulik</u>, 841 F. Supp. 2d 456, 460 (D. Mass. 2011).

for relief that is actionable as a matter of law and "plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  For a claim to be facially plausible, the pleadings must show "more than a sheer possibility that a defendant has acted unlawfully." Id.  A plaintiff cannot merely restate the defendant's potential liability. Id.

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  The Court may also consider documents if 1) the parties do not dispute their authenticity, 2) they are "central to the plaintiffs' claim" or 3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

## B.  Application

To state a claim for negligence under Massachusetts law, a plaintiff must demonstrate that 1) "the defendant owed the plaintiff a duty of reasonable care", 2) "the defendant breached this duty", 3) "damage resulted" and 4) "there was a causal relation between the breach of the duty and the damage". Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006).

Pajak asserts that Rohm & Haas and Dow Chemical owed him a duty to

> (1) maintain the vessel in a reasonably safe condition; (2) design/adopt a reasonably safe method for the trimethylaluminum reclamation process; (3) provide adequate training to the Plaintiff related to the trimethylaluminum reclamation process; and/or (4) maintain the work environment in a reasonably safe condition.

He further alleges that those defendants breached their duty of care by

> failing to (1) maintain the vessel in a reasonably safe condition; (2) design/adopt a reasonably safe method for the trimethylaluminum reclamation process; (3) provide adequate training to the Plaintiff related to the trimethylaluminum reclamation process; and/or (4) maintain the work environment in a reasonably safe condition.

Those allegations are completely devoid of any factual assertions specifying how Rohm & Haas and Dow Chemical breached any of their purported duties of care (such as how they insufficiently maintained the container or working environment or how the design of or training as to the trimethylaluminum reclamation process was inadequate) but rather just restate the alleged duty of care in the negative.  Plaintiff also does not specify which defendant engaged in what particular misconduct.

Such conclusory statements are insufficient to state a claim for negligence. See, e.g., Barnstable Cty. v. 3M Co., Civil Action No. 17-40002, 2017 WL 6452245, at *11-12 (D. Mass. Dec. 18, 2017) (dismissing claims for negligence because "the

complaint is devoid of specific allegations as to how each defendant caused the [alleged injury]"); Williams v. Mass. Coll. of Pharmacy & Allied Health Scis., Civil Action No. 12-10313-DJC, 2013 WL 1308621, at *9 (D. Mass. Mar. 31, 2013); Miranda v. Hurley, Civil Action No. 10-11117-GAO, 2011 WL 2941570, at *3 (D. Mass. 2011) (dismissing negligence claim for "purported failure to train, supervise, and discipline police officers . . . [because] the complaint is completely devoid of any factual basis to support the theory"); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing Twombly, 550 U.S. at 555)).

Moreover, plaintiff merely asserts that his injuries were the "direct and proximate result of said negligence" but does not otherwise allege any facts to demonstrate that his injuries were caused by the conduct of Rohm & Haas and Dow Chemical rather than one of the other named defendants.  Indeed, elsewhere in the complaint Pajak contends that his injuries were caused by the defectively designed or manufactured container supplied by Alfa Laval.  It is unclear from the allegations in the complaint how the conduct of Rohm & Haas or Dow Chemical contributed to the accident that was purportedly the result of a defective container manufactured by a third party.

Plaintiff has therefore failed to state a plausible claim for negligence as to Rohm & Haas or Dow Chemical and their motion for judgment on the pleadings as to Counts I and III of the complaint will be allowed.  Plaintiff will be permitted, however, to file an amended complaint remedying the identified deficiencies.  It appears to the Court that the Dow defendants have been recalcitrant with respect to the relevant issues in this case, such as the identity of the plaintiff's employer and the manufacturer and/or supplier of the allegedly defective container.  If the defendants continue to obfuscate, this Court will impose sanctions against the offending party and/or counsel.

### ORDER

For the foregoing reasons,

1) Alfa Laval's motion to dismiss for lack of personal jurisdiction (Counts IV, V and VI of the Complaint) (Docket No. 13) is **ALLOWED** without prejudice;

2) RHEM's motion to dismiss for lack of jurisdiction and for failure to state a claim (Count II of the Complaint) and for an award of attorney's fees and costs (Docket No. 16) is, with respect to the motion to dismiss, **ALLOWED** but otherwise **DENIED**; and

3) the motion of Rohm & Haas and Dow Chemical for judgment
   on the pleadings (Counts I and III of the Complaint)
   (Docket No. 25) is **ALLOWED.**

Plaintiff may file within thirty (30) days of this Order an amended complaint with respect to his alleged claims against Alfa Laval, Rohm & Haas and Dow Chemical.


**So ordered.**


                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated July 3, 2019